# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JACKIE LEE SNIDER,**

    **Petitioner,**

v.                                        **CIVIL ACTION NO. 3:06cv93**
                                               **(Judge Bailey)**

**EVELYN SEIFERT,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On September 11, 2006, the *pro se* petitioner, Jackie Lee Snider ["Snider"], an inmate in the custody of the West Virginia Division of Corrections, filed an Application for Habeas Corpus pursuant to 28 U.S.C. §2254, seeking the expungement of disciplinary charges from his record. By Order entered on October 10, 2006, the Court ordered the respondent to show cause why the petition should not be granted. On October 19, 2006, the respondent filed her response with exhibits, and on December 11, 2006, the petitioner filed his reply. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

### II. FACTS

On April 25, 2002, Snider was taken to see a nurse at St. Marys Correctional Center,[1] During the visit, Snider asked the nurse why he had previously experienced bleeding in his scrotum.

---

[1]At the time of the incident in question, Snider was incarcerated at St. Marys Correctional Center. However, at the time he filed his petition, Snider was confined at the Northern Correctional facility, where Evelyn Seifert is the warden.

1

Snider told the nurse that he believed the bleeding occurred from "choking his tube" in the shower. Snider then proceeded to talk about sexual matters in a highly vulgar manner.[2] When he concluded his sexual vulgarity, Snider reached over to the nurse and "ran his hand over [her] breast." The nurse informed Snider that he was not allowed to touch her and then left the room. (Doc. 14-3. p. 11).

Subsequently, the nurse filed an incident report (Doc. 14-10), and Snider was charged with violating administrative Rule 1.03, which is entitled "Rape." On May 2, 2002, a disciplinary hearing was held before a magistrate. Snider pled not guilty to the charge of violating Rule 1.03. He moved to dismiss the charge on the grounds that the rule required sexual penetration.[3] The motion to dismiss was denied. During the hearing, the only witness called was the nurse who testified about the conversation Snider had with her and his groping of her breast. Snider did not testify. The magistrate found Snider guilty and sentenced him to six months punitive segregation, ninety days loss of privileges and one year loss of good time. (D0c. 14-3, p. 12).

Snider filed an administrative appeal, (Doc. 1-2) which was denied. (Doc. 14-3). Thereafter, Snider filed a petition for habeas corpus before the Circuit Court of Pleasants County.[4] (Doc. 14-4). The petition was denied on June 9, 2004. (Doc. 14-10). Snider then appealed to the West Virginia Supreme Court, where the decision by the Circuit Court of Pleasants County was affirmed on February 27, 2006. (Doc. 14-8, p. 2). Snider then filed the § 2254 petition currently pending before this Court.

---

[2]Because of the crudeness of Snider's language, the undersigned has refrained from verbatim recitation.

[3]Snider was represented by another inmate at the hearing.

[4]Snider originally filed a petition for habeas corpus in the Circuit Court of Fayette County, where it was dismissed for lack of venue. (Doc. 14-5, pp. 6-7).

## III. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff held that an inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-567. In the instant case, the petitioner does not contend that the disciplinary hearing violated his procedural due process rights. Rather, he simply contends that he is not guilty of "rape" as found by the magistrate. Specifically, he argues that he did not "rape, harm or force sex in no way."

With respect to the burden of proof, the constitutional standard of evidence for prison disciplinary evidence is "some evidence." Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445 (1985). "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced...'" Id.quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent at 455.

Pursuant to W.Va. Code § 28-5-27(f), the Commissioner of the Division of Corrections is authorized to:

3

> promulgate separate disciplinary rules for each institution
> under his control in which adult felons are incarcerated,
> which rules shall describe acts which inmates are prohibited
> from committing, procedures for charging individual inmates
> for violation of such rules and for determining the guilt or
> innocence of inmates charges with such violations and the
> sanctions which may be imposed for such violations.

In carrying out this authority, the Commissioner adopted Policy Directive No. 325.00, which outlines, among other things, prohibited conduct by inmates. The offense for which Snider was charged and convicted, Rule 1.03 , is set out in the Policy Directive. In particular, the Directive defines rape, a Class 1 Rule Violation as follows: "1.03 An inmate shall not physically force, or attempt to force another person to submit to any sexual act, nor shall they threaten another person with harm in order to compel them to commit a sexual act." Accordingly, Rule 1.03 contains three separate and independent prohibitions. First, the rule states that an inmate shall not physically force another person to submit to any sexual act and contemplates an actual consummation of the prohibited conduct. Second, the rule prohibits an inmate from attempting to physically force another person to submit to any sexual act. This provision does not require consummation of a sexual act- only the use of force in attempting the same. Finally, the rule states that an inmate shall not threaten another person with harm in order to compel him/her to a sexual act. This provision would appear to be violated through consummation of a sexual act caused by a threat of harm

In reaching his decision, the magistrate considered the Violation Report and the testimony of the nurse, who initiated the Violation Report. Although Snider entered a plea of Not Guilty to the charge, he chose to remain silent. Therefore, the only evidence presented at the hearing established that after Snider spoke to the nurse in extremely vulgar sexual language, including asking her to engage in sex, he intentionally reached over and ran his hand over her breast. Therefore, although the nurse acknowledged that Snider did not physically harm her, nor threaten

her, there clearly was "some evidence" to support a guilty finding in this case, and the prison magistrate's decision must therefore stand. Furthermore, Snider's position that the internal rules governing prisoner conduct must equate to criminal offenses is without legal support.

### IV. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 12, 2008.

                                         /s/ James E. Seibert
                                         JAMES E. SEIBERT
                                         UNITED STATES MAGISTRATE JUDGE